IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EBONY HAYS, et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. JKB-24-3306 |
| LRW TRAFFIC SYSTEMS LLC, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pending before the Court is the parties' Renewed Joint Motion for Approval of Collective Action Settlement and Direction of Notice. (ECF No. 112.) The Motion will be granted in part and denied in part.

### I. BACKGROUND

In its prior Memorandum and Order denying the parties' original joint motion for settlement approval, the Court outlined the factual background and procedural history of this case. (ECF No. 106.) Thus, the Court only briefly summarizes this background now.

Plaintiffs are construction flaggers who worked for LRW Traffic Systems and its President, Robert Scott-Coples (the "LRW Defendants"). (ECF No. 74 ¶ 31.) Plaintiffs allege that the LRW Defendants contracted with Stella May Contracting and B. Frank Joy (the "General Contractor Defendants") to provide flaggers for various worksites. (*Id.* ¶ 33.) Plaintiffs allege that Defendants did not pay them sufficiently for their time. (*E.g., id.* ¶¶ 36–42, 53–55.) Several Plaintiffs also allege that the LRW Defendants retaliated against them for seeking the compensation allegedly owed to them. (*Id.* ¶¶ 120–139.) Based on these allegations, Plaintiffs brought a collective action claim alleging violation of the Fair Labor Standards Act ("FLSA") and class action claims alleging

violations of Maryland labor law. (*Id.* ¶¶ 66–119.) Several Plaintiffs also brought retaliation claims under the FLSA and Maryland law. (*Id.* ¶¶ 140–153.)

The parties engaged in mediation and reached a resolution of their claims. The parties summarized the terms of the settlement as follows:

> The LRW Defendants have agreed to pay Seven Hundred and Sixty Thousand Dollars ($760,000.00) to settle the claims in this action against both themselves and the General Contractor Defendants. The Settlement Agreement calls for: (a) Settlement payments to eligible current and former workers who wish to join the Settlement up to $420,000; (b) $5,000 service payments to each of the five Named Plaintiffs; (c) $95,000 retaliation damages to the nine Plaintiffs named for retaliation purposes, and (d) Plaintiffs' counsel's fees and expenses of $220,000. The costs of Settlement administration also will come from the Settlement funds.

(ECF No. 97-1 at 5.) By joint motion, the parties asked the Court to "(a) approv[e] notice to the Proposed Settlement Collective; (b) grant[] final approval of the executed settlement term sheet between the Parties dated May 13, 2025 (the 'Settlement Agreement'); (c) order[] distribution of the settlement proceeds pursuant to the Settlement Agreement; and (d) approv[e] the award of attorneys' fees and costs to Plaintiffs' counsel pursuant to the Settlement Agreement." (*Id.* at 2.)

The Court denied the parties' joint motion. (ECF No. 106.) The Court directed the parties' attention to "a line of cases from this district, which provide that approval of an FLSA settlement prior to certification and notice is not appropriate." (*Id.* at 5.) These cases raised two primary issues with the parties' desired procedure: (1) whether the process was fair to potential members of the collective who had not yet opted in as plaintiffs and (2) whether the process created a mootness issue that prevented the Court from acquiring jurisdiction over potential opt-in plaintiffs.

The Court instructed the parties to file a renewed motion on one of two bases. First, the parties could "request[] conditional certification of the collective class and facilitation of notice of the proposed settlement to putative class members" without yet seeking final settlement approval.

2

(*Id.* at 5–6 (quoting *Leigh v. Bottling Grp., LLC*, No. CIV.A. DKC 10-0218, 2011 WL 1231161, at *4 (D. Md. Mar. 29, 2011)).) Or, second, the parties could provide "reasoned authority supporting the appropriateness of settlement on a class-wide basis prior to certification of the case as a collective action and prior to any notice of the suit or [potential plaintiffs'] ability to opt-in being provided to putative class members[.]" (*Id.* at 6 (quoting *Smock v. Meridian Senior Living, LLC*, No. CV DKC 23-1154, 2024 WL 4792123, at *1 (D. Md. Nov. 14, 2024)).) The parties have now filed their Renewed Motion on this second basis. (*See* ECF No. 112-1 at 8.) They assert that the Fourth Circuit's unpublished decision in *Haskett v. Uber Technologies*, 780 Fed. Appx. 25, 27 (4th Cir. 2019) is "reasoned authority," which persuasively supports their position.

## II. STANDARD OF REVIEW

"Congress enacted the FLSA to protect workers from substandard wages and excessive hours that resulted from unequal bargaining power between employers and employees." *Rineholt v. HFS Fin. LLC*, No. CV ABA-22-3253, 2024 WL 1243844, at *2 (D. Md. Mar. 21, 2024) (internal quotation marks and citation omitted). Section 216(b) of the FLSA provides in relevant part that an action for violations of the statute "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute further provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* A district court can aid this "opt-in" process by conditionally certifying a collective and facilitating notice of the lawsuit to putative members of the collective. *Bobb v. FinePoints Priv. Duty Healthcare, LLC*, No. CV JKB-23-03129, 2024 WL 1299929, at *2 (D. Md. Mar. 27, 2024). That is because, in the FLSA context, "[c]ertification . . . is merely the trial

3

court's exercise of discretionary power to notify potential [collective] members" of the lawsuit. *Blake v. Broadway Servs., Inc.*, No. CV CCB-18-086, 2018 WL 4374915, at *2 (D. Md. Sept. 13, 2018). If the parties reach a settlement agreement, then the Court must formally approve the agreement to ensure that the employer is not taking advantage of its employees. *Rineholt*, 2024 WL 1243844, at * 2.

### III.   ANALYSIS

*Haskett* does not resolve, nor even address, the mootness issue previously raised by the Court.[1] Rather, the Court agrees with numerous courts around the country that have held that final settlement approval is not appropriate when non-party employees may still later opt in as plaintiffs and seek a portion of the settlement proceeds. *See, e.g., Leigh*, 2011 WL 1231161, at *2; *Parra v. Quality Controlled Concrete, LLC*, No. 1:13CV1113, 2015 WL 12750445, at *2 (M.D.N.C. Mar. 11, 2015); *O'Bryant v. ABC Phones of N.C., Inc.*, No. 2:19-CV-02378, 2020 WL 4493157, at *11 (W.D. Tenn. Aug. 4, 2020). However, as several courts have also concluded, the Court finds that it may conditionally certify the collective and preliminarily approve the settlement. *See, e.g., Curtis v. Genesis Eng'g Sols., Inc.*, No. GJH-21-722, 2022 WL 1062024, at *9 (D. Md. Apr. 8, 2022); *Mygrant v. Gulf Coast Rest. Grp., Inc.*, No. CV 18-0264-WS-M, 2019 WL 4620367, at *2 (S.D. Ala. Sept. 23, 2019). Once notice is sent to all eligible members of the collective and they have been given a satisfactory chance to opt into the action, then the parties may seek final approval of the settlement. While the Court recognizes that this process may not be the most pragmatic way to resolve this dispute, it is the legally correct one. Therefore, the Court—and the parties—must follow it.

---

[1] Because *Haskett* does not resolve the mootness issue, the Court need not decide what effect, if any, it has on the fairness concern that was raised in the *Leigh* line of cases.

## A. Final Settlement Approval

The parties ask the Court to conditionally certify the collective and grant final settlement approval at the same time. (ECF No. 112.) The issue, however, is that if the Court grants final approval of an FLSA settlement at the same time that it certifies the collective, there is no longer a case or controversy for the potential plaintiffs to opt into. That is because, as the parties themselves point out, a named plaintiff in an FLSA collective action only represents his or her own interests. (ECF No. 112-1 at 11–12 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (citation corrected)).) Thus, "if a named plaintiff resolves her individual claims before anyone joins the lawsuit, then, a court's jurisdiction to entertain the rest of the case ends." *Sharnee Smith v. Sodexo, Inc.*, No. CV PX-22-00984, 2024 WL 446258, at *10 (D. Md. Feb. 6, 2024) (citing *Genesis Health Care Corp. v. Symczyk*, 569 U.S. 66, 73 (2013)).

The parties offer two arguments that address this mootness issue.[2] They first assert that it is commonplace for district courts to retain "ancillary jurisdiction to enforce settlement agreements [when] they had jurisdiction over the underlying dispute." (ECF No. 112-1 at 22 (quoting *Wudi Indus. (Shanghai) Co. v. Wong*, 143 F.4th 250, 258 (4th Cir. 2025)).) While that is true, this ancillary jurisdiction is not nearly as broad as the parties contend. As one district court has explained:

> The parties are not asking the Court to retain jurisdiction only to enforce the terms of the settlement agreement. [They are] asking the Court to retain jurisdiction to *assert* jurisdiction over any party who desires to opt into the suit. That power is "quite remote" from the purpose for which courts retain ancillary jurisdiction.

---

[2] The parties do not contend that *Haskett* resolves the mootness concern. Nor could they, because *Haskett* arose in an entirely different procedural posture. In that case, certification took place long before final settlement approval. *See Hood v. Uber Techs., Inc.*, No. 1:16-CV-998, 2019 WL 93546, at *1 (M.D.N.C. Jan. 3, 2019), *aff'd sub nom. Haskett v. Uber Techs., Inc.*, 780 F. App'x 25 (4th Cir. 2019). Thus, there was no mootness problem at all.

5

*O'Bryant*, 2020 WL 4493157, at *12 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–81 (1994)). The Court agrees with this analysis and joins numerous other courts in doing so. *See, e.g.*, *Sharnee Smith*, 2024 WL 446258, at *9–11; *Coleman v. Amazon.com, Inc.*, No. 21-CV-2200, 2023 WL 4408713, at *3 (W.D. Tenn. July 7, 2023) ("After dismissal, the Court would not simply be retaining jurisdiction over the parties to a settlement, but would effectively be asserting jurisdiction over new parties and their claims."); *Shepheard v. Aramark Unif. & Career Apparel, LLC*, No. 15-7823-DDC-GEB, 2016 WL 5817074, at *2 (D. Kan. Oct. 5, 2016).

The structure of the settlement agreement also does not obviate this mootness concern. The parties explain that people who opt into the case after the settlement agreement is finalized "are in exactly the same position, with the same rights as all previous opt-ins." (ECF No. 112-1 at 21 n.5.) But this is an argument focused on fairness to the potential opt-in plaintiffs, not on the Court's ability to assume jurisdiction over them. It is also irrelevant that no payments will be made until after all potential plaintiffs have actually opted in. (*See id.* at 6–7.) In order to reap these benefits, parties still must opt into the suit first. 29 U.S.C. § 216(b). But once the Court grants final approval of the settlement, it relinquishes jurisdiction, except to enforce the settlement. And as explained above, this does not include the power "to assert jurisdiction over any party who desires to opt into the suit." *O'Bryant*, 2020 WL 4493157, at *12 (citation modified).

Furthermore, the parties do not cite to any case that alters the Court's analysis. The parties contend that, in *Hopkins v. LRW Traffic Sys. LLC*, No. CV 1:23-2355-CDA, 2025 WL 1370643 (D. Md. May 9, 2025), the Court retained jurisdiction to enforce a settlement agreement. (ECF No. 112-1 at 13.) But neither that case nor the cases it cited to involved agreements where plaintiffs could opt into the dispute after the settlement agreement had been signed. The parties also cite to *Curtis*, which did involve a settlement agreement similar to the one here. *See Curtis*, 2022 WL

6

1062024, at *1. But in that case, Judge Hazel granted only *preliminary* approval of the agreement before notice was authorized. *Id.* at *7. Thus, there was still a live controversy for potential plaintiffs to opt into. Finally, the parties cite to *Janetis v. LifeBridge Health, Inc.*, No. CV RDB-23-2628, 2025 WL 1284648 (D. Md. May 1, 2025). The parties are correct that, in this case, Judge Bennett approved a procedure analogous to what the parties request here. *Id.* at *1. With the utmost respect for its colleague, the Court disagrees with Judge Bennett's conclusion. As has occurred in other cases, *see, e.g. McCune v. Faneuil Inc.*, No. 4:23-CV-41, 2024 WL 3811411 (E.D. Va. Aug. 13, 2024), the Court in *Janetis* seemingly did not recognize the mootness issue. *Janetis*, though, is a prime example of the practical problems caused by the mootness problem. Since the Court's decision in *Janetis*, two different plaintiffs have sought to opt into the lawsuit, presumably after receiving court-authorized notice. However, because the case is closed, the Court did not allow them to opt in. (*Janetis* Docket, ECF Nos. 37, 38.) Thus, *Janetis* only reinforces the Court's finding that it cannot assert jurisdiction over parties who attempt to opt into the lawsuit after final approval of the settlement is granted. As a result, the Court's ancillary jurisdiction to enforce settlement agreements does not resolve the mootness concern.

Finally, in a footnote, the parties briefly contend that, if ancillary jurisdiction to enforce the settlement agreement is not enough, this Court's Local Rule 111 provides a suitable mechanism. (ECF No. 112-1 at 22 n.6.) The parties state that this Rule allows the Court to "keep the case open until the Parties provide notice that the Settlement has been effectuated." (*Id.* at 22.) But that is not how Local Rule 111 works. Rather, under Local Rule 111, when parties notify the Court that a case has been settled, "the Court may enter an order dismissing the case." However, the dismissal is without prejudice and the parties may move the Court to reopen the case if the settlement is not consummated. *Id.* Thus, Local Rule 111 does not keep the case open until the

7

settlement is effectuated; it keeps the case closed unless the settlement is not effectuated. Thus, the Rule does not resolve the mootness concern because potential plaintiffs would still be attempting to opt into a case that has been closed.

### B. Conditional Certification and Preliminary Settlement Approval

Although the Court is unable to certify the collective and grant *final* settlement approval at the same time, the Court can conditionally certify the collective and grant *preliminary* approval of the settlement. *Curtis*, 2022 WL 1062024, at *7–9; *Mygrant*, 2019 WL 4620367, at *2. This approach solves multiple problems. First, because the Court is not granting final settlement approval, there is no mootness issue. *Mygrant*, 2019 WL 4620367, at *2. Second, the parties explain that employees who receive notice cannot make a fully informed choice about opting in because "the fairness of the settlement remains to be litigated." (ECF No. 112-1 at 18.) But if the Court preliminarily approves the settlement, these employees can make a more informed choice. Third, if the Court grants only preliminary approval, its "administration of the settlement" will not inevitably require "multiple unnecessary hearings" as the parties worry (*id.*). Indeed, in FLSA actions, there is no requirement that the Court hold a fairness hearing. *Rosales v. Rock Spring Contracting LLC*, No. 3:23CV407 (RCY), 2024 WL 1417955, at *4 (E.D. Va. Apr. 2, 2024); *Mygrant*, 2019 WL 4620367, at *7 ("Absent sufficiently serious objection from one or more opt-in plaintiffs, unresolved after communication with plaintiffs' counsel, the need for a fairness hearing appears remote."). Finally, the Court is mindful that Plaintiffs are seeking an expeditious resolution to this matter and their "primary concern" is "receiving the payments that are owed." (ECF No. 112-1 at 12.) Accordingly, the Court will conditionally certify the collective and preliminarily approve the settlement.

### 1. Conditional Certification

The decision whether to certify a collective action under the FLSA lies within the sound discretion of the district court. *Essame v. SSC Laurel Operating Co.*, 847 F. Supp. 2d 821, 824 (D. Md. 2012). Courts employ "a two-step process to test the sufficiency of the purported class: (1) a pre-discovery determination that the purported class is similarly situated enough to disseminate a notice . . . ; and (2) a post-discovery determination, typically in response to a motion for decertification, that the purported class is indeed similarly situated." *Jackson v. Am. Elec. Warfare Assocs., Inc.*, Civ. No. TDC-22-1456, 2023 WL 5154518, at *2 (D. Md. Aug. 10, 2023). Further, "[e]ven when parties agreed to settle an FLSA dispute on behalf of a class of similarly situated employees, some final class certification determination must be made before approving a collective action settlement." *Edelen v. Am. Residential Servs., LLC*, Civ. No. DKC-11-2744, 2013 WL 3816986, at *4 (D. Md. July 22, 2013) (internal quotation marks omitted); *see also Graham v. Famous Dave's of Am., Inc.*, Civ. No. DKC-19-0486, 2022 WL 17584274, at *7 (D. Md. Dec. 12, 2022) (explaining that the second stage "usually occurs following discovery but must occur in any event before approving a collective action settlement").

Here, Plaintiffs have met their burden to conditionally certify the collective. Plaintiffs have submitted affidavits describing the policies that the LRW Defendants subjected them to. (ECF No. 97-7.) Plaintiffs were told to arrive at construction sites before their shift began (ECF No. 97-7 at 3, 7); they did not receive lunch or rest breaks, but their time was still docked as if they took a break (*id.* at 4, 8); they were not paid for travel time between work sites (*id.* at 4, 8); and they were sometimes not paid for time that they spent at the LRW Yard waiting on standby (*id.* at 4, 8). Plaintiffs averred that all construction flaggers at LRW were subject to these policies. (*Id.* at 5, 9.) Accordingly, the Court will conditionally certify a collective. *Accord Randolph v. PowerComm*

*Constr., Inc.*, 309 F.R.D. 349, 369 (D. Md. 2015) (certifying constructions flaggers as an FLSA collective); *Ortiz v. Consol. Edison Co. of N.Y., Inc.*, No. 22 CIV. 8957 (JLR) (GS), 2025 WL 2717326, at *9 (S.D.N.Y. Sept. 24, 2025) (same).

Although the parties' briefing does not specify the desired scope of the collective, the Notice form attached to the Motion provides sufficient clarification. This form states that a person can join the lawsuit if they "have worked as a construction flagger for LRW at any time between November 15, 2021 and [date of settlement approval] and were not paid for all hours worked." (ECF No. 112-4 at 2.) Defendants do not object to this description, as it was attached to the Joint Motion. The Court finds that this collective is appropriately narrow and judicially manageable. Accordingly, the Court will conditionally certify the collective as described in the Notice form, except that the closing date will be the date that the opt-in period ends. This will ensure that workers who receive the Notice Form during the opt-in period can actually opt into this case.

The Court also finds the other terms of the Notice form to be appropriate. In particular, the 90-day opt-in period is reasonable. *Bobb*, 2024 WL 1299929, at *5. Thus, the Court will approve the Notice form and authorize dissemination of it.

### 2. Preliminary Settlement Approval

The Court now addresses preliminary approval of the settlement. "The Fourth Circuit has not established a definitive rubric for determining the propriety of an FLSA settlement, but district courts in this circuit have adopted the considerations set forth in [*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)]." *Berman v. Mid-Atl. Eateries, Inc.*, Civ. No. ABA-23-2840, 2024 WL 3597191, at *2 (D. Md. July 31, 2024). "Under this approach, the Court determines whether a settlement provides 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1355).

### a. Bona Fide Dispute

"To determine whether a bona fide dispute exists, the Court reviews the pleadings, the recitals in the Agreement, and other court filings in the case." *Rineholt*, 2024 WL 1243844, at *2 (citation modified). When a case involves a disagreement about pay rates and hours worked, there is a bona fide dispute. *Fernandez v. Washington Hosp. Servs., LLC*, No. 8:23-CV-839-AAQ, 2023 WL 4627422, at *2 (D. Md. July 19, 2023); *White v. LLPD, LLC*, No. DLB-18-2900, 2021 WL 195335, at *2 (D. Md. Jan. 20, 2021). Here, the Second Amended Complaint alleges that pay was improperly withheld (ECF No. 74 at ¶¶ 66–76), and several plaintiffs have attested to this in affidavits (ECF No. 97-7 at 3, 7). Accordingly, this case involves a bona fide dispute.

### b. Fair and Reasonable Terms

Next, the Court considers whether the settlement contains fair and reasonable terms. Courts in this District consider all relevant factors, but they agree that the most important factors are:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[ ]; (5) the opinions of class counsel ...; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Rineholt*, 2024 WL 1243844, at *3. "These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect their rights under the statute." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1354) (citation modified).

Beginning with the first factor, the parties state in their Joint Motion that informal discovery has occurred. That is sufficient to satisfy this factor. *Duprey*, 30 F. Supp. 3d at 409.

Second, the Court considers the stage of the proceeding. "Early termination of the proceedings based on [the parties'] mutual interest in avoiding the time, expense, and risk of continuing this action is reasonable." *Rineholt*, 2024 WL 1243844, at *3. Here, "[t]he primary concern of Plaintiffs is the delay in approval of the settlement agreement, and thus in receiving the payments that are owed." (ECF No. 112-1 at 12.) Therefore, the fact that the parties wish to settle relatively early in the case does not support a finding of unfairness. Rather, it comports with the goals of the plaintiff-employees. Furthermore, counsel has spent an "inordinate amount" of time on this case, which has already resulted in a significant amount of attorneys' fees. (ECF No. 112-6 at 7.) It is reasonable for the parties to want to resolve the case now, so that legal expenses do not continue to increase. Plaintiffs' counsel also spent significant time investigating the case (*id.* at 8) and the parties engaged in a full day of mediation before reaching the settlement agreement (*id.* at 4). Based on this, the Court is satisfied that Plaintiffs' attorneys have "protected their rights." *Duprey*, 30 F. Supp. 3d at 408.

Third, there is no evidence of fraud or collusion in this case. And in the absence of such evidence, the Court presumes there is no fraud or collusion. *Rineholt*, 2024 WL 1243844, at *3.

Fourth, Plaintiffs' counsel is highly experienced. One attorney, Mark Hanna, states that his firm, Murphy Anderson PLLC, has successfully served as lead counsel in numerous labor and employment law cases in this District and others. (ECF No. 112-6 ¶ 2.) Mr. Hanna also routinely speaks at conferences on wage-and-hour law issues. (*Id.*) That is sufficient to satisfy this factor. *See Rineholt*, 2024 WL 1243844, at *4; *Hackett v. ADF Rest. Investments*, 259 F. Supp. 3d 360, 366 (D. Md. 2016).

Fifth, Plaintiffs' counsel opines that the settlement is fair and reasonable. (ECF No. 112-6 at 4.) There are several cases in this District which have found similar statements to be sufficient

to satisfy this factor. *See Rineholt*, 2024 WL 1243844 at *4; *Santos v. E&R Servs., Inc.*, No. CV ABA-20-2737, 2024 WL 1416564, at *3 (D. Md. Apr. 2, 2024). Accordingly, this factor is satisfied.

Sixth, the Court must consider the probability of Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. Payment to Plaintiffs for lost wages and liquidated damages will be $420,000. (ECF No. 112-6 at 6.) The total amount that they are allegedly owed in backpay and liquidated damages is approximately $1.8 million. (*Id.* at 4.) Thus, their award is about 23% of their potential recovery. The Court's research shows that this 23% award is on the lower end of what is normally approved. *See, e.g., Rineholt*, 2024 WL 1243844, at *4 (settlement amount was 76% of maximum recovery at trial); *Fernandez*, 2023 WL 4627422, at *4 (settlement amount was 100% of unpaid wages and liquidated damages recoverable at trial). However, other courts have found similar amounts to be sufficient for this factor. *See, e.g., Strother v. OS Rest. Servs., LLC*, No. 8:22-CV-0845-AAQ, 2023 WL 1769733, at *4 (D. Md. Feb. 3, 2023) (finding that a settlement awarding 30% of possible recovery was reasonable); *Lee v. Ex-Exec Lube, LLC*, No. DLB-19-3195, 2021 WL 1117274, at *2 (D. Md. Mar. 24, 2021) (approving settlement in which plaintiff received, in total, 14% of claimed backpay). Furthermore, because of LRW's troubled financial state, there is a chance that even if Plaintiffs were awarded a higher amount at trial, they would not be able to collect it. (ECF No. 112-1 at 26.) And this is a permissible consideration. *Sibrian v. Superior Auto Detailing, LLC*, No. 22-CV-00169-LKG, 2024 WL 2941267, at *6 (D. Md. June 10, 2024). Based on the information before the Court at this early stage of the proceedings, particularly LRW's probable inability to pay a higher amount, the Court finds that a 23% recovery reasonably reflects the Plaintiffs' likelihood of success on the merits. Thus, this factor is satisfied.

Finally, the Court considers the propriety of the release of claims provisions in the settlement agreement. *Fernandez*, 2023 WL 4627422, at *4. If a release provision is overbroad, it may render a settlement unreasonable under the FLSA. *Id.* A release is overbroad "when it releases the defendant from liability for claims that have no relationship whatsoever to wage-and-hour issues alleged in the complaint." *Nazareth v. Shree Jay Jalaram, LLC*, No. 5:24-CV-70390, 2025 WL 1332968, at *6 (W.D. Va. May 7, 2025) (internal quotation marks omitted). But an overbroad release may still be permissible as long as the plaintiffs are independently compensated. *Id.* A service award may act as the requisite independent compensation. *Johnson v. PHP of N.C., Inc.*, No. 5:23-CV-462-M, 2025 WL 2717423, at *4 (E.D.N.C. Sept. 24, 2025).

Here, the settlement agreement contains two release provisions. Non-named plaintiffs only "agree to a release of the federal and state wage-and-hour claims alleged in this lawsuit." (ECF No. 112-3 at 5.) The scope of this release is permissible because, by its clear terms, it only relates to the "wage-and-hour issues alleged in the complaint." *Nazareth*, 2025 WL 1332968, at *6. However, the named plaintiffs "agree to a general release of any and all claims against the Defendants, including the federal and state wage-and-hour claims in this lawsuit." (ECF No. 112-3 at 5.) While this release is quite broad, each of the named plaintiffs will receive a $5,000 service award in additional consideration for this general release. (ECF No. 112-3 at 3.) "Because [the named plaintiffs] will be independently compensated for the overbroad release, the release is reasonable." *Nazareth*, 2025 WL 1332968, at *7; *see also Berman*, 2024 WL 3597191, at *8 (finding general release language acceptable where the employee is reasonably compensated).

### c. Attorneys' Fees and Costs

The Court next must determine if the settlement agreement's provision of attorneys' fees and costs is reasonable. *White*, 2021 WL 195335, at *3. Courts in this District follow the lodestar

14

method to determine if attorneys' fees are reasonable. *Id.* "The lodestar method calculates reasonable fees by multiplying the number of reasonable hours expended times a reasonable rate. There is a strong presumption that the lodestar figure is reasonable." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (citation, quotations, and alterations omitted). The Fourth Circuit has explained that it:

> has endorsed a three-part standard for use in calculating attorney's fees under the lodestar approach: First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 27 F.4th 291, 303 (4th Cir. 2022) (quoting *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)). To ascertain the number of reasonable hours expended multiplied by a reasonable rate, the Court applies the *Johnson* factors, which include:

> (1) the time and labor expended by counsel; (2) the novelty and difficulty of the questions presented; (3) the skill required to properly perform the legal services rendered; (4) the lawyer's opportunity costs in pressing the instant litigation; (5) the customary fee for similar work; (6) the lawyer's expectations at the outset of the litigation; (7) any time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the lawyer; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the lawyer and the client; and (12) attorney's fees awards in similar cases.

*Id.* at 303 n.7 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978)).

Here, the settlement agreement states that $220,000 will be awarded to Plaintiffs' counsel in attorneys' fees and costs. (ECF No. 112-3 at 3.) Although this figure is high, the Court is satisfied that it is reasonable. Plaintiffs' counsel expended significant time on this matter. (ECF No. 112-6 at 5.) Counsel conducted over 35 interviews with LRW employees, prepared several motions and responses to motions, spent "significant time advocating for complete employee records," and developed a damages model based on these records. (*Id.*) Counsel also avers that the case required "an inordinate amount of time and resources" both because of the retaliation claims and "significant challenges in receiving complete employee information for a damages analysis." (*Id.* at 7.) Next, as the parties point out, this case involved novel questions of Maryland wage law. (ECF No. 112-1 at 28–29.) Although the parties reached the settlement agreement before the Court could decide these questions, briefing was completed. (*See* ECF No. 67.) Regarding the qualifications of the attorneys, the briefing is deficient in that it only provides the background of Mr. Hanna but not the other attorneys. Mr. Hanna has practiced law for over 25 years and is an experienced wage-and-hour litigator. (ECF No. 112-7 at 5.) Thus, under this Court's Local Rules, his hourly rate is $475. Local Rules, App. B. As of April 21, 2025, he had worked 133.9 hours on this case. This results in a fee amount of $63,602.50. Even if the Court assumes that the other attorneys working on the case all have minimal experience, the attorneys' fees calculation is still reasonable. These attorneys worked a total of 798.9 hours. If the Court multiplies that figure by $225 per hour (the Local Rules rate for attorneys with less than 5 years of experience), that equals $179,752.50. When this is added to Mr. Hanna's sum, the total is $243,355. This lodestar calculation is well above the requested figure of $220,000. Finally, this fee award is comparable to other awards in similar cases. *See, e.g.*, *Hackett*, 259 F. Supp. 3d at 369 (awarding over $243,000 in fees and costs for less than 300 hours of work in an FLSA case);

16

*Chado v. Nat'l Auto Inspections, LLC*, No. CV JKB-17-2945, 2020 WL 4368106, at *6 (D. Md. July 30, 2020) (approving an award of $260,000 in fees and costs in an FLSA settlement). Accordingly, the Court will approve the requested amount of $220,000 in attorneys' fees and costs.

## IV.  CONCLUSION

For the foregoing reasons, the parties' Renewed Joint Motion for Approval of Collective Action Settlement and Direction of Notice (ECF No. 112) will be granted in part and denied in part. A separate Order follows.

DATED this _18_ day of November, 2025.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
United States District Judge

17